NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE PENSION FUND AND TRUSTEES THEREOF,<br><br>Plaintiffs,<br>v.<br><br>CID CONSTRUCTION SERVICES, LLC,<br><br>Defendant. | Civil Action No. 15-cv-3412 (SRC)(CLW)<br><br>OPINION |

**CHESLER**, District Judge

This matter comes before the Court upon two motions filed by Defendant CID Construction Services ("CID"): a motion to dismiss the Complaint filed by Plaintiffs New Jersey Building Laborers' Statewide Pension Fund and Trustees Thereof ("the Pension Fund"), and a motion for summary judgment by CID on all claims, pursuant to Federal Rule of Civil Procedure 56. The Pension Fund opposes these motions. The Court has considered the parties' submissions and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny both CID's motion to dismiss and CID's motion for summary judgment.

**I.    BACKGROUND**

The Pension Fund seeks to recover from CID withdrawal liability owed by U.S. Environmental University, a/k/a U.S.E.U.S, per a default judgment issued by this Court on March 25, 2015 (No. 13-7449 (KM)). (Compl. ¶¶ 1, 20.) The Pension Fund was established and is maintained under § 302(c)(5) of the Labor Management Relations Act ("LMRA"), under the

1

2

provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1381(a) (2012). (Compl. ¶ 1.) The Pension Fund alleges that U.S.E.U.S. is the same employer, a joint employer, and/or an alter ego of CID for the purpose of withdrawal liability. (Compl. ¶¶ 22-27.) The Pension Fund also alleges that CID is a successor employer for the purpose of withdrawal liability, and that CID is a controlled group for purposes of joint liability for U.S.E.U.S.'s withdrawal liability. (Compl. ¶¶ 28-29.) CID filed the motion to dismiss in lieu of an answer.

## II. STANDARDS OF REVIEW

### a. MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury

3

could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set out specific facts showing a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### b. MOTION TO DISMISS

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 127 S. Ct. at 1964 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).

Factual allegations must be well-pleaded to give rise to an entitlement to relief:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. ANALYSIS

#### a. MOTION FOR SUMMARY JUDGMENT

This motion was filed in lieu of an answer from CID, and provides the Court with limited evidence on which to make its ruling. At this point, the Court finds that it would be premature to grant summary judgment. The Pension Fund has had no opportunity to conduct discovery on the actual relationship between the alleged alter ego company and the judgment debtor, and thus material issues of fact pertaining to the relationship between the companies remain in dispute. See Velez v. Pittman, No. 09-1418 (JAP), 2010 WL 2516513 (D.N.J. June 14, 2010) (citing

Harvey v Campbell, No. 06-1891 (RMB), 2007 WL 2893193 (D.N.J. Sept. 28, 2007) (internal citations omitted)).

CID's motion for summary judgment is denied without prejudice.

**b. MOTION TO DISMISS**

As a threshold matter, CID has requested that the Court consider documents extrinsic to the Complaint, which would require converting the motion to a motion for summary judgment. Fed. R. Civ. P. 56(d). As discussed above, the Pension Fund would be entitled to discovery before that motion could be decided. Thus, the Court will constrain itself to considering the Complaint in its determination on this motion.

Accepting all of the Pension Fund's allegations as true, the Court finds that the Pension Fund has pled sufficient specific facts about the relationship between CID and U.S.E.U.S. in the Complaint to support the theories of liability raised in the Complaint. These facts satisfy the pleading standards under Rule 8(a) and Twombly/Iqbal. Furthermore, the Court finds that CID has not satisfied its burden to show that no claim has been presented on which the Court could grant relief.

The Pension Fund alleges three main theories under which they claim entitlement to withdrawal liability from CID: alter-ego, successor liability, and controlled group liability. The Court will deal with each in turn.

    a. Alter-Ego Claim

Alter ego analysis seeks to determine "the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations." Stardyne, Inc. v. NLRB, 41 F.3d 141, 150 (3d Cir. 1994). The alter ego inquiry set forth by the Third Circuit in Stardyne inquired whether the business and

the alter ego share "'substantially identical' management, business purpose, operation, equipment, customers, and supervision, as well as ownership." Id. at 151. The Third Circuit applies a flexible approach to the alter ego analysis.  Even flexible approaches, however, must comport with the pleading requirements of Twombly. The Supreme Court's analysis in Howard Johnson Co. v. Detroit Local Joint Executive Board, 417 U.S. 249, 261 (1974), provides a useful contrast:

> It is important to emphasize that this is not a case where the successor corporation is the "alter ego" of the predecessor, where it is "merely a disguised continuance of the old employer."  Such cases involve a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws, without any substantial change in its ownership or management.  In these circumstances, the courts have had little difficulty holding that the successor is in reality the same employer and is subject to all the legal and contractual obligations of the predecessor.

The key concept here is that, in an alter ego relationship, one entity is a disguised form of the other.

The Third Circuit laid out relevant factors in determining whether the alter ego doctrine applies in a given case: failure to observe corporate formalities; nonpayment of dividends; insolvency of the debtor corporation; siphoning of funds from the corporation by the dominant shareholders; nonfunctioning of other officers and directors; absence of corporate records; whether the corporation is a mere façade for the operation of the dominant shareholder or shareholders; and gross undercapitalization. United States v. Pisani, 646 F.2d 83, 88 (3d Cir. 1981). Not all of these factors need be present to apply the alter ego doctrine, but "specific, unusual circumstances" are required for the alter ego doctrine to apply. Am. Bell Inc. v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 887 (3d Cir. 1984). Furthermore, the list of factors is not exclusive, as a court may find "a less precise notion that the corporations simply acted

7

interchangeably and in disregard of their corporate separateness." Id. at 886-87 (quoting Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1070 (3d Cir. 1979)).

ERISA permits the assignment of employer withdrawal liability under an alter ego theory. Brown v Astro Holdings, Inc., 385 F. Supp. 2d 519, 531-32 (E.D. Pa. 1985). The Third Circuit has not adopted a test specifically for the analysis of alter ego status under ERISA, but has used the standards described above to determine whether the doctrine is applicable. See, e.g., Gov't Dev. Bank for P.R. v. Holt Marine Terminal, Inc., 765 F. Supp. 2d 710 (2011). Furthermore, "an intent to evade [ERISA] is an important, but not an essential, factor" in the analysis. Stardyne, 41 F.3d at 151. There is "a federal interest supporting disregard of the corporate form to impose liability" in ERISA cases. Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002) (quoting Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 460-61 (7th Cir. 1991)).

The Pension Fund has adequately pled an alter ego theory of liability. It pled that CID and U.S.E.U.S. collaborate on labor and employee relationships, and that the companies use the same equipment and machinery. (Compl. ¶¶ 25-26.) Further, it pled that the companies have common ownership, common business operations, and a common corporate structure, as well as operating from the same location and operations. (Compl. ¶¶ 22-24, 26.) The Court finds that these facts make plausible that CID is an alter ego of U.S.E.U.S.

b. Successor Liability Claim

At common law, "when one company sells or transfers all its assets to another, the successor company does not embrace the liabilities of the predecessor simply because it succeeded to the predecessor's assets." Phila. Elec. Co. v. Hercules, Inc., 762 F.2d 303, 308 (3d Cir. 1985). There are four exceptions to this general rule of successor non-liability: (1) where the

purchaser of assets expressly or impliedly assumes the liabilities of the transferor; (2) where the transaction amounts to a *de facto* merger; (3) where the purchasing corporation is merely a continuation of the transferor corporation; and (4) where the transaction is fraudulently intended to escape liability. Alcoa v. Beazer E., Inc., 124 F.3d 551, 565 (3d Cir. 1997).

Federal courts have expanded the scope of successor liability in a number of employment-related actions, including ERISA cases. See, e.g., Einhorn v. M.L. Ruberton Constr. Co., 632 F.3d 89, 99 (3d Cir. 2011) (holding that "a purchaser of assets may be liable for a seller's delinquent ERISA fund contributions . . . where the buyer had notice of the liability prior to the sale and there exists sufficient evidence of continuity of operations between the buyer and seller."); Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990) (holding that the successorship doctrine could be extended to an ERISA action where an asset purchaser assumed liability for the delinquent pension contributions of its predecessor).

Here, the Complaint pleads sufficient facts to make plausible that CID would be responsible for U.S.E.U.S.'s withdrawal liability on a theory of successor liability. The Pension Fund asserts that the entities are related through family ownership and employment, and that the companies share equipment, premises, and a place of business. (Compl. ¶¶ 22-26.) It also alleged that CID exists to avoid U.S.E.U.S.'s withdrawal liability. (Compl. ¶ 30.) Taken together, the Court finds that these alleged facts give rise to a reasonable claim for successor liability.

  c. Controlled Group Claim

The MPPAA extends liability beyond the withdrawing employer to "'trades or businesses' (whether or not incorporated) which are under common control" with the

9

withdrawing employer. 29 U.S.C. § 1301(b)(1). Businesses under common control are treated as a single entity under ERISA, and are jointly and severally liable for the withdrawal liability of the other entity. ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1).

ERISA and the MPPAA do not define the terms "under common control" or "trade or business." These statutes authorize the Pension Benefit Guaranty Corporation to issue regulations defining common control" that are to be "consistent and coextensive with" regulations promulgated by the Treasury Department under § 414(c) of the Internal Revenue Code to determine whether two entities are in a controlled group, and thus liable as a single employer. Flying Tiger Line v. Teamsters Pension Trust Fund of Phila., 830 F.2d 1241, 1244 n.2 (3d Cir. 1987); IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 123 (3d Cir. 1986). These regulations define entities under common control as those either linked by a parent corporation or a group of five or fewer individuals who control 80 percent of a company's voting shares or profits. 26 U.S.C. § 1563(a). Although the regulations do not define "trade or business," the Supreme Court has determined that to engage in a "trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit." Comm'r of Internal Revenue v. Groetzinger, 480 U.S. 23, 35 (1987). In applying this term to MPPAA actions, courts have primarily "undertaken a factual inquiry to determine whether characterizing an entity as a 'trade or business' will fulfill the underlying purpose of the MPPAA: to prevent employers from avoiding withdrawal liability by fractionalizing their operations." Gov't Dev. Bank for P.R. v. Holt Marine Terminal, Inc., 765 F. Supp. 2d 710, 715 (2011) (citing Bd. of Trs. of the W. Conference of Teamsters Pension Fund v. H.F. Johnson, Inc., 830 F.2d 1009, 1013 (9th Cir. 1987)).

There are sufficient facts alleged in the Complaint that the Pension Fund has stated a common control claim upon which relief could be granted by the Court. The Pension Fund alleges that CID exists to avoid U.S.E.U.S.'s withdrawal liability, and that the businesses shared common ownership, common business operations, and a common corporate structure. (Compl. ¶¶ 22, 30.) Furthermore, the Pension Fund alleges that the same individual or individuals own, manage, and oversee the operations of CID and U.S.E.U.S. (Compl. ¶ 23.) The Complaint also alleges that CID and USEUS perform the same or similar services, in construction, and that they use and share the same equipment and machinery. (Compl. ¶ 26.) There is no dispute that CID and U.S.E.U.S. both engage in the business of construction. Construed in the light most favorable to the Pension Fund, these alleged facts establish that a claim exists that CID and U.S.E.U.S. were under common control.

Based on the findings discussed herein, the Court finds the Complaint states valid claims for relief, and denies CID's motion to dismiss the Complaint.

B. **CONCLUSION**

For the foregoing reasons, the Court denies CID's Motion for Summary Judgment; and it further denies CID's Motion to Dismiss the Complaint. An appropriate Order will be filed.

    s/ Stanley R. Chesler  
    STANLEY R. CHESLER  
    United States District Judge

Dated: October 14, 2015